**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-20454-CR-BECERRA**

**UNITED STATES OF AMERICA**

**vs.**

**CARL ALAN ZAGLIN,**

**Defendant.**

_____/

**DEFENDANT ZAGLIN'S SECOND**
**MOTION FOR NEW TRIAL**

Defendant Carl Zaglin respectfully files this Second Motion for New Trial, respectfully

moving the Court to grant Defendant a new trial pursuant to Federal Rule of Criminal Procedure

33, showing that, upon information and belief, co-Defendant Aldo Nestor Marchena (Marchena)

testified falsely against Defendant in Defendant's trial. In view of the fact that Marchena was one

of the chief witnesses against Defendant at trial, Marchena's perjured testimony at trial necessitates

a finding that Mr. Zaglin's "'conviction is tainted, and there can be no other just result than to

accord [him] a new trial.'" *United States v. Agresti*, 794 F. Supp. 3d 1185, 1196 (S.D. Fla. 2025)

(quoting *Mesarosh v. United States*, 352 U.S. 1, 9, 14 (1956)).[1] Defendant furthermore requests

that an evidentiary hearing be held on his motion.

**I. BACKGROUND**

---

[1] The defense makes no suggestion in its arguments herein that the Government presented
Marchena's testimony at trial with knowledge that Marchena would commit perjury. *See United
States v. Young*, 17 F.3d 1201, 1203-1204 (9th Cir. 1994) ("A conviction based in part on false
evidence, even false evidence presented in good faith, hardly comports with fundamental
fairness").

The Government indicted Marchena, Francisco Roberto Cosenza (Cosenza) Centeno and Mr. Zaglin in this action in November of 2023. *See* Dkt. # 3. Marchena was a fugitive at the time the case was indicted. *See* Dkt. # 7. He was extradited to the United States in October of 2024. *See* Dkt. # 96. In June of 2025, Marchena entered a guilty plea in this action. *See* Dkt. # 137. Following the trial of Mr. Zaglin, the Government filed a Motion for Departure Pursuant to United States Sentencing Guidelines § 5K1.1, seeking a 40 percent reduction in Marchena's sentence for his providing substantial assistance in the Government's prosecution of Mr. Zaglin and Cosenza. *See* Dkt. # 252.

The Court granted the Government's Motion for Pretrial Detention regarding Marchena. *See* Dkt. # 100. From October of 2024 through Mr. Zaglin's trial in September of 2025, Marchena was held in custody at Federal Detention Center (FDC) Miami. *See* Exhibit A, ¶ 4. While in custody at FDC Miami, Marchena spoke with another inmate, Danny A. Rodriguez, concerning Marchena's legal matters, as shown by the attached sworn affidavit of Danny A. Rodriguez. *Id*. at ¶¶ 3, 4. Marchena told Rodriguez that he was going to testify and said "***I am going to lie on an old fucking Jew***." *Id*. at ¶ 5. Marchena justified what he told Rodriguez that he was going to do by saying "***I'm going home, fuck it***." *Id*.

Mr. Zaglin was taken into to custody following the jury's verdict on September 15, 2025, and was confined at FDC Miami. While in custody, Mr. Zaglin came into contact with Rodriguez. *See* Exhibit A, ¶ 8. Mr. Rodriguez informed Mr. Zaglin of Marchena's statements. *Id*. at ¶ 10.

Marchena testified on behalf of the Government against Mr. Zaglin at trial. *See* Dkt. # 207. 226. Marchena stated to the jury that he received money from Mr. Zaglin, and made bribe payments on behalf of Mr. Zaglin. *Id*. at 44, 46, 47, 67, 72; Dkt. # 209, pp. 12, 13, 34, 43.

The prosecution made numerous references to Marchena's testimony during its closing arguments to the jury at trial. *See* Dkt. # 226, pp. 32, 33, 36, 41. It displayed a portion of Marchena's testimony to the jury as alleged evidence that Mr. Zaglin knew that the money which he was sending to Marchena's company, Achieve, were bribes. *Id*. at 41. The prosecutor told the jurors "***You know the defendant was in on it based on everything having to do with Aldo Marchena***." *Id*. at 34 (emphasis added). Mr. Zaglin does not maintain that the Government possessed any knowledge that Marchena intended to give, and gave, perjured testimony in calling Marchena as a witness at trial.

## II. <u>ARGUMENT</u>

Under Federal Rule of Criminal Procedure 33, on a defendant's motion, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for new trial is addressed to the sound discretion of the Court. *See United States v. Jeri*, 869 F.3d 1247, 1259 (11th Cir. 2017) (quoting *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 562 (11th Cir. 1987)). In order to succeed on a motion for new based on newly discovered evidence:

> [T]he movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*Agresti*, 794 F. Supp. 3d at 1195 (citing *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003), *abrogated on other grounds*; quoting *United States v. Ramos*, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)).

As shown by the Rodriguez affidavit, Mr. Zaglin was made aware of Marchena's statements to Rodriguez concerning his testimony against Mr. Zaglin after trial. *See* Exhibit A, ¶¶ 8, 10. Marchena's statements to Mr. Rodriguez could not have been discovered prior to trial.

Marchena statement to Mr. Rodriguez that he was going to "lie" in his testimony against Mr. Zaglin indicates that either all or some of Marchena's testimony before the jury and the Court at trial was false or perjured. Marchena's comment to Mr. Rodriguez that by lying regarding Mr. Zaglin in his testimony at trial he would be "going home" suggests that Marchena was motivated to give false testimony which would result in the Government recommending a reduction in sentence for him. In addition, Marchena's disparaging reference to Mr. Zaglin's religion or ethnicity and age indicates that his testimony against Mr. Zaglin was motivated by a personal prejudice or bias against Mr. Zaglin.

Mr. Zaglin's core defense at trial to the charges against him was that he lacked the requisite intent to conspire to violate the Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§ 78dd-1 *et seq*. (FCPA), to commit a substantive violation of the FCPA, or to conspire to engage in money laundering. Although not the only witness to state at trial that Mr. Zaglin presumably was aware that monies which Mr. Zaglin's company, Atlanco, LLC, paid to Marchena and Achieve would be paid to Honduran officials, Marchena was certainly the Government's most important witness concerning the essential element of Mr. Zaglin's intent. The prosecution emphasized to the jury at trial that Marchena's testimony demonstrated that Mr. Zaglin was aware that bribes would be paid to the officials. Marchena's admission that he was going to lie in his testimony for the Government therefore calls the truth of Marchena's testimony regarding Mr. Zaglin's purported knowledge of the payments to Honduran officials and supposed intent to bribe the officials into serious doubt. The evidence of Marchena's pre-trial statements concerning his

testimony at trial and his motivation to lie was therefore material. It is furthermore not merely cumulative or impeaching. "'[E]vidence of perjured testimony by a key witness is more than mere impeachment evidence, and it 'taints' a conviction." *Agresti*, 794 F. Supp. 3d at 1198 (quoting *United States v. Valdes*, No. 07-CR-20288, 2010 WL 11629648, at *10 (S.D. Fla. Nov. 22, 2010); quoting *United States v. Diaz*, 190 F.3d 1247, 1255 (11th Cir. 1999)).

Finally, had the defense been able to present evidence or impeach Marchena regarding the fact that, prior to trial, he had made statements to others that he was going to lie in his testimony concerning Mr. Zaglin, and that he believed by lying about Mr. Zaglin that he would "go home," as well as evidence that Marchena possessed a prejudice or bias against Mr. Zaglin based on Mr. Zaglin's religion, the trial might have potentially had a different outcome. The Supreme Court has recognized that evidence concerning a witness' credibility may influence a jury's determination of guilt or innocence. "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).

Motions for new trial have been granted in this District under similar circumstances. In *Agresti*, the defendant was charged and tried for conspiracy to commit health care and wire fraud as well as substantive violations. 794 F. Supp. 3d at 1188.[2] One of the defendant's co-defendants

---

[2] Other jurisdictions have similarly granted motions for new trial where perjured testimony has been presented at trial. *See United States v. Collins*, 243 F. App'x 56, 58-59 (5th Cir. 2007) (*per curiam*; unpublished) (concluding that the district court's decision to grant the defendant a new trial did not constitute an abuse of discretion where the court found, in part, that the testimony of the government's key witness "was unfounded and perjured…"); *Young*, 17 F.3d at 1204 (reversing the defendant's convictions and remanding for new trial in the interests of justice, holding that the defendant was entitled to a new trial whether or not the prosecutor knew that the testimony of a government witness was false, "and whether or not [the witness] committed perjury or was simply mistaken").

was the government's star witness at trial. *Id*. The witness testified at trial that he had paid the defendant thousands of dollars, which allegedly proved that the defendant was in on the fraud with the witness. *Id*. at 1189. The defendant was convicted and after he and the government's witness had been sentenced, the witness stated that he had invented the story about giving cash payments to the defendant. *Id*. at 1190. There was furthermore evidence that, before and after trial, the witness told other persons that he planned to, and did, commit perjury. *Id*. at 1190.

The defendant moved for new trial, and the Court found that the witness' perjury constituted more than mere impeachment, and that a new trial would probably produce a different result. 794 F. Supp. 3d at 1188, 1199. It furthermore concluded that the witness' testimony was material because it was regarding an essential element of the alleged offense—the defendant's intent. *Id*. at 1199. Finally, it found that without the witness' perjured testimony, the jury might have viewed the evidence differently. *Id*. at 1203.

As with the perjured testimony in *Agresti*, Marchena's testimony at trial was material and concerned essential elements of the charges against Mr. Zaglin, and was not merely cumulative. As the prosecution argued at trial, Marchena was the supposed middle man who paid the Honduran officials on behalf of Mr. Zaglin. Evidence that Marchena made statements prior to testifying at trial that he intended to lie in his testimony in order to reduce his potential sentence would have constituted compelling evidence as to his lack of credibility and truthfulness. Evidence regarding Marchena's prejudice or bias towards Mr. Zaglin based on Mr. Zaglin's religion or age would likewise be highly probative as to his credibility. It furthermore cannot be concluded that such evidence would not have had an effect on the outcome of the trial.

"[P]erjury taints the entire proceeding and corrupts the truth-seeking function of trial because it is a fundamental violation of our system of justice." *Agresti*, 794 F. Supp. 3d at 1198.

"'If the trial court finds that a material witness did commit perjury, and without his testimony the jury might not have convicted, a new trial is necessary.'" *United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1973) (holding that "a new trial should be ordered so that the government may present its case free of erroneous testimony…") (quoting Moore, 8A *Moore's Federal Practice*, ¶ 33.06[1]). "The dignity of the United States Government will not permit the conviction of any person on tainted testimony." *Mesarosh*, 352 U.S. at 9. The evidence regarding Marchena's testimony satisfies the requirements for the grant of a new trial. Based on the evidence discovered by the defense, the grant of a new trial of Mr. Zaglin is in the interest of justice, and furthermore in the interest of upholding the integrity of these proceedings and ensuring that Mr. Zaglin's convictions do not rest on perjured and tainted testimony.

### III. CONCLUSION

On the basis of the facts and authorities set forth herein, Defendant Carl Zaglin respectfully requests that the Court grant Defendant's Second Motion for New Trial and grant Defendant a new trial in this action. Defendant furthermore requests that an evidentiary hearing be held regarding the issues raised herein.

Respectfully submitted, this 16th day of December, 2025.

ROBERT M. PEREZ, P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, Florida 33133
(305) 598-8889 - Office
E-mail: rperez@rmplawpa.com

S/Robert M. Perez.................
ROBERT M. PEREZ
Florida Bar Number: 477494

*/s/ Craig A. Gillen*_____

Craig A. Gillen, Esq.

*/s/ Anthony C. Lake*_____

Anthony C. Lake, Esq.

GILLEN LAKE & CLARK LLC

400 Galleria Parkway

Suite 1920

Atlanta, Georgia 30339

Telephone: (404) 842-9700

Fax: (404) 842-9750

Email: cgillen@glcfirm.com

aclake@glcfirm.com

Counsel for Mr. Carl Zaglin

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed electronically via CM/ECF on this 16th day of December, 2025.

ROBERT M. PEREZ, P.A.

3162 Commodore Plaza, Suite 3E

Coconut Grove, Florida 33133

(305) 598-8889 - Office

E-mail: rperez@rmplawpa.com

S/Robert M. Perez.................

ROBERT M. PEREZ

Florida Bar Number: 477494

Counsel for Mr. Carl Zaglin

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

### CASE NO. 23-20454-CR-BECERRA

**UNITED STATES OF AMERICA**

**vs.**
**CARL ALAN ZAGLIN,**

**Defendant.**

_____/

### AFFIDAVIT OF DANNY A. RODRIGUEZ

I, **Danny A. Rodriguez**, hereby give this affidavit and do solemnly swear that the following is true and correct to the best of my knowledge and belief:

1. My name is **Danny A. Rodriguez**. I was born on **March 1, 1972**. I am currently in the custody of the **United States Bureau of Prisons** at the **Federal Detention Center (FDC) in Miami, Florida**, and my inmate registration number is **48128-004**.

2. Between approximately **November 2024 and February 2025**, I was housed on the **10th floor** of the Miami FDC.

3. During that period, I had conversations with several inmates regarding our legal matters, including my own.

4. I met an inmate known to me at the time as **Aldo**
   .

5. During one of our conversations in spanish, **Aldo stated the following** in reference to a case in which he said he was going to testify: *"I am going to lie on an old fucking Jew."* Aldo also went on to justify it by saying *"I'm going home, fuck it."*

6. At the time of that comment, I knew nothing about the case he was referring to.

7. On or about February 2025, or shortly after leaving the 10th floor, I was relocated to **9 West** in the same facility

8. While housed on **9 West**, I met **Mr. Carl Zaglin**. Mr. Zaqlin was an inmate who had already been convicted at trial.

9. When **Mr. Carl Zaglin** told me about his case I was able to make the connection between **Aldo's** comments month's before and **Mr. Carl Zaglin's** case.

pg 1 of 2    11/20/25

10. Realizing this was the same case **Aldo** had discussed when he stated he was going to *"lie on an old fucking Jew,"* I asked **Mr. Carl Zaglin** if his co-defendant was "Aldo." **Zaglin** looked at me and asked how I knew that. I then explained to him that **in late 2024 or early 2025, Aldo had stated to me that he was going to testify in court and** *"lie on an old fucking Jew."*

11. My conversation with **Mr. Carl Zaglin** occurred **approximately one month ago,** placing it in **September or October of 2025.**

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

November 28, 2025.

_____

**Danny A. Rodriguez**
**Inmate Reg. No. 48128004**
**FDC Miami, Florida**